Mark T. Clausen (Calif. SB# 196721)
Attorney at Law
769 Carr Avenue
Santa Rosa, California 95404
Office Telephone: (707) 542-9700
Cellular Telephone: (707) 235-3663 (preferred)
Facsimile: (707) 542-9713
Email: MarkToddClausen@yahoo.com

Attorney for Plaintiffs
Pedro Dector and Floriberto Perez Ojeda and all others similarly situated

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO BRANCH

| | |
|---|---|
| PEDRO DECTOR AND FLORIBERTO PEREZ OJEDA and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ROHNERT PARK, ROHNERT PARK DEPARTMENT OF PUBLIC SAFETY, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 3:13-cv-00104-RS<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>[A Putative Class Action]<br><br>[Jury Trial <u>Not</u> Requested] |

Comes now plaintiffs Pedro Dector and Floriberto Perez Ojeda, on behalf of themselves and all others similarly situated, who hereby file this second amended complaint for damages and injunctive relief and herein allege, claim and pray as follows.

**JURISDICTION & VENUE**

1. The Court has subject matter jurisdiction over the matters herein alleged and the action is properly filed in federal court because a federal constitutional question is presented and damages are sought pursuant to 42 U.S.C. § 1983. The Court has personal jurisdiction over defendants because they are located in the County of Sonoma, State of California. Venue in the United States District Court for the Northern District of California, San Francisco Branch, is appropriate because plaintiffs and defendants are located in the County of Sonoma and the acts complained of occurred in and continue to incur in the County of Sonoma.

## PARTIES

4. Plaintiffs Pedro Dector ("DECTOR") and Floriberto Perez Ojeda ("OJEDA") (collectively "plaintiffs") are individuals over the age of 18 and residents of the County of Sonoma, State of California, whose vehicles were impounded by the defendants pursuant to California Vehicle Code[1] section 14602.6, authorizing the 30-day impound of a vehicle which has been operated by a person who has a suspended or revoked license or has never been issued a valid license. Plaintiffs are undocumented aliens who, under existing state law, cannot obtain valid California driver's licenses, as herein described.

5. Defendant City of Rohnert Park ("THE CITY") is a governmental entity organized under the laws of the State of California and is responsible for the policies, practices, actions and omissions of the Rohnert Park Department of Public Safety ("RPDPS"), a law enforcement agency organized under the laws and established, controlled and operated by and on behalf of the City. Herein, all factual references to RPDPS are also to THE CITY, which has delegated to RPDPS the authority to establish the policies and practices herein described and/or has approved and ratified those policies and practices.

6. Plaintiffs are ignorant of the true names and capacities of the defendants sued herein as Does 1-10, inclusive, and therefore sue these defendants, and each of them, by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that Does 1 through 10, inclusive, and each of them, are responsible in some manner for the occurrences alleged herein, and that plaintiffs' injuries as alleged herein were proximately caused by these defendants.

## OVERVIEW OF SECTION 14602.6

8. Section 14602.6, subdivision (a), states:

> Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, driving a vehicle while his or her driving privilege is restricted [based on multiple DUI convictions] and the vehicle is not equipped with a functioning, certified interlock device, or driving a

---

[1] All statutory references are to the corresponding California Code, and all undesignated statutory references are to the Vehicle Code.

*Dector v. City of Rohnert Park, et al.* – Case No. 3:13-cv-00104-RS   Second Amended Complaint   - 2 -

vehicle without ever having been issued a driver's license, the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person .... A vehicle so impounded shall be impounded for 30 days.

9. Following the impoundment of a vehicle under section 14602.6, the impounding agency must "send a notice by certified mail ... to the legal owner of the vehicle" within 2 business days, "informing the owner that the vehicle has been impounded." (§14602.6, subd. (a)(2).) The owner "shall be provided the opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the [impound], in accordance with Section 22852." (§ 14602.6, subd. (b).) Section 22852 provides that the notice must include the contact information of the agency providing the notice, "the location of the place of storage and description of the vehicle[,]" "[t]he authority and purpose for the removal of the vehicle[,]" and a statement that a hearing must be requested within 10 days[.]" Subdivision (c) of section 22852 authorizes law enforcement agencies to use their own employees as impound hearing officers, and *all* state law enforcement agencies do so.

10. When an impound hearing officer concludes that a vehicle was *not* lawfully impounded under section 14602.6, the impounding agency must pay the towing and storage fees and release the vehicle without charge to the owner. (§ 22851, subd. (e).) When, on the other hand, an impound hearing officer finds a vehicle *was* lawfully impounded, the vehicle owner must pay all accrued towing and storage fees, as well as a release fee imposed by the impounding agency, before the vehicle will be released— even if the impound hearing officer has concluded the vehicle should be released prior to 30-days. (§§ 14602, subd. (e), 22850.5, 22851 & 22851.12; Civ. Code §§3068.1 & 3073.) For a 30-day impound, the average charge is about $1,600-$1,750 and in many locations exceeds $2,000. If the owner is unable or unwilling to pay the charge, the vehicle is sold— i.e., forfeited— and th proceeds applied to the outstanding charge. (§§ 22851, 22851.1, 22851.3, 22851.4, 22851.6; Civ. Code §§3071-3073).

11. The Vehicle Code is completely silent concerning the manner in which an impound hearing is to be conducted— including, as particular pertinent here, the information and documents which should be provided or otherwise made available to a vehicle owner prior to, during, and

after the impound hearing.

## LIMITATIONS ON SECTION 14602.6

12. The 30-day impoundment provision of subdivision (a) of section 14602.6 has been found by the California Court of Appeal to be permissive, not mandatory, and impoundment is therefore entirely discretionary. A law enforcement officer may elect *not* to impound a vehicle when section 14602.6 authorizes impoundment, even if a reasonable officer in like circumstances would order the impoundment of the vehicle; and, likewise, law enforcement agencies are free to adopt more liberal policies which prohibit impoundment when the statute allows it, or require release from impound when the statute does not require it.

13. Many law enforcement agencies in this state have adopted policies which are more lenient than section 14602.6, including RPDPS. RPDPS employs a policy which mirrors that used by the LAPD, recently approved by the California Attorney General, in which the first violation of section 12500 (driving without a valid license) is exempt from impoundment under section 14602.6. Subsequent violations of section 12500 result in vehicle impoundment under section 14602.6, usually for the full 30 days. The primary purpose of such policies is to alleviate the harsh affects of impoundment on undocumented aliens who cannot obtain valid California driver's licensed under the existing state of the law. (See Calif. A.G. Opn. No. 12-301 (May 3, 2012).)

14. For at least the past 2 decades, the California Legislature and various acting Governors have debated the wisdom of issuing California driver's licenses to undocumented aliens and subjecting them to 30-day impoundment under section 14602.6 and impoundment and forfeiture under section 14607.6. The Legislature has approved several bills which would have authorized DMV to issue licenses to undocumented aliens; however, each time the bills were vetoed by the acting Governor and were not signed into law. Another such bill is now pending before the Legislature. (2013 AB 60 (Alejo).)

15. Under recent legislation signed into law by Governor Brown, effective January 1, 2013 the California DMV "may issue an original driver's license to [a] person who submits proof of presence in the United States as authorized under federal law pursuant to [the deferred action

*Dector v. City of Rohnert Park, et al.* – Case No. 3:13-cv-00104-RS    Second Amended Complaint    - 4 -

for childhood arrivals program– i.e., the Dream Act]." (§ 12801.6, subd. (b), enacted by 2012 AB 2189 (Cedillo).) However, the legality of the Dream Act is of significant debate, with numerous legal challenges pending in federal courts throughout the country, and the federal government has yet to implement the Dream Act in any substantive form. At the present time, no one in California can "submit[] proof of presence in the United States as authorized under federal law pursuant to [the Dream Act]" and thereby obtain a California driver's license pursuant to section 12801.6, subdivision (b). Thus, presently, the ability to obtain a driver's license under section 12801.6 is, like the Act, just a dream– albeit one which appears closer in reach than ever before.

16. In the meantime, the California Legislature has taken 2 significant steps to protect undocumented aliens from the often draconian affects of state law governing unlicensed drivers.

17. First, in 2011, the Legislature enacted section 12801.5, governing applications for driver's license and related matters. Subdivision (e) of section 12801.5 provides: "Notwithstanding Section 40300 [generally authorizing custodial arrests, notices to appear in lieu of custodial arrest, and notices to appear if a violation is not timely corrected] or any other provision of law, a peace officer may not detain *or arrest* a person solely on the belief that the person is an unlicensed driver, unless the officer has reasonable cause to believe the person driving is under the age of 16 years." (Italics added.)

18. This is significant to the application of section 14602.6, as subdivision (a) of section 14602.6 authorizes a 30-day impoundment only if the driver has been *arrested* or the vehicle has been involved in accident. In a recent opinion, the California Attorney General found that absent an arrest or traffic collision, a "30-day [impound] is plainly inapplicable and unavailable" under section 14602.6, subdivision (a). (AG Op. No. 12-301 (May 3, 2012).) More recently, the 9th Circuit reached a similar conclusion, *United States v. Cervantes* (9th Cir. Nov. 28, 2012) 678 F.3d 798, 806 ("*Cervantes*"). The California Attorney General and the 9th Circuit Court of Appeal did not consider the question– which is the subject of significant debate– whether the phrase "arrest that person" as used in subdivision (a) of section 14602.6 is limited to *custodial* arrest or also includes a citation and release on promise to appear, which the Vehicle Code generally defines as a form of arrest. (See, e.g., §§ 40303 and 40303.5 ["whenever a person is arrested for any of the

offenses" identified in the statutes, "the arresting officer" may "permit the arrested person" to execute a promise to appear or, if applicable, a notice containing a promise to correct the violation].) The 9th Circuit appears to have concluded that a custodial arrest is required. (*Cervantes, supra*, 678 F.3d 798, 806.) Either way, subdivision (e) of section 12801.5 prohibits the "arrest" of a person over age 16 solely on the belief that the person is an unlicensed driver, and "arrest" as used in section 12801.5 has the same meaning as "arrest" as used in section 14602.6. Therefore, vehicle impoundment under section 14602.6 is inapplicable where the driver's only offense is driving without a license in violation of section 12500, as section 12801.5 prohibits an arrest in those circumstances.

19. Second, also in 2011, the Legislature enacted section 2814.2. (Cal. Stats. 2011, c.653 (A.B. 353).) Under section 2814.2, a person who is stopped at a sobriety checkpoint and is found to be in violation of section 12500 (driving without a valid license) is *not* subject to 30-day impoundment under section 14602.6, but only a routine tow under section 22651, which allows the vehicle to be retrieved immediately by the owner or his agent upon presentation of a valid driver's license and payment of the towing charges. Section 2814.2 was enacted in response to reports of widespread racial profiling and other discriminatory use of 30-day impounds under section 14602.6 to target Hispanic drivers who may be undocumented aliens who are unable to obtain a California driver's license. (*Ibid.*)

20. Moreover, section 14602.6 does *not* apply to *all* driver's whose licenses have been suspended or revoked or who do not have a valid California driver's license. Rather, by its express terms and under construction given those terms by the California Court of Appeal, section 14602.6 applies to only a subcategory of drivers who are considered to be particularly dangerous and thus pose a *heightened* risk to public safety above and beyond that posed by unlicensed drivers generally.

21. In this respect, subdivision (d)(1)(C) of section 14602.6 provides that impoundment is authorized only when the driver's license "was suspended or revoked for an offense **other than** those included in Article 2 (commencing with Section 13200) of Chapter 2 of Division 6 or Article 3 (commencing with Section 13350) of Chapter 2 of Division 6." (Emphasis added.) This

means that suspensions or revocations *other than* those which fall under sections 13200-13392 are <u>exempt</u> from 30-day impoundment, including sections 12810.5 (negligent operation - excessive violation points), 12814.6 (provisional license suspensions), 12818 (failed reexamination), 12819 (failure to respond to reexamination notice), 13801 (failure to submit to a DMV reexamination), 13953 (suspension or revocation based on reexamination), 13954(A) (in an accident within 5 years of a manslaughter conviction), 13954(D)(1) (in an accident with a .08 BAC or higher), 13954(D)(2) (in an accident caused by a prohibited act or neglect of duty), 16004(A) (failure to report an accident to DMV), 16030 (false evidence of insurance), 16070 (failure to provide proof of insurance at an accident scene), 16071 (failure to provide proof of insurance in another state, resulting in suspension by the other state), 16072(A) (failure to maintain insurance), 16073 (b) (commercial operator suspension), 16370 and 16370.5 (unsatisfied civil judgment), 16381 (default on payments on a judgment), 16484 (insurance coverage lapse), 22454.5 (3rd conviction for passing a school bus), 23247(G)(1) and 23247(2) (operation of a vehicle without a court ordered DUI ignition interlock device), 34623 (motor carrier suspension), and 42001.1 (crossing guard violation with 2 priors); as well as Family Code section 17520 (failure to pay child support).

22. The Legislature further reduced the pool of drivers who may be lawfully subjected to section 14602.6 by stating in subdivision (a) of the statute that impoundment shall be authorized for driving on a suspended or revoked license, or "*without ever having been issued a driver's license[.]*" (Italics added.) The Legislature thereby made a distinction between those who have *never* been issued a driver's license, and those who have been issued a license at some point in the past, in California or elsewhere, but the license has since expired. The latter category of offenders– those who do not currently have a valid license, but previously did– are *not* subject to 30-day impoundment. This category of drivers includes persons who were formerly issued a valid driver's license in a foreign jurisdiction, such as Mexico, as section 310 states: "a valid license to drive" is one issued "under this code *or by a foreign jurisdiction*." (Italics added.) Thus, a person who does not have a valid California driver's license, but was once issued a valid license in this state or any other, or any foreign country, is not subject to 30-day impoundment under section 14602.6, despite the fact that the person is subject to prosecution under section 12500 for driving

1 without a valid driver's license.

23. The Legislature has also codified its intent that vehicle owners who were *not* driving the vehicle at the time of impoundment should not suffer 30 days' impoundment under section 14602.6. In this respect, subdivision (d)(1) of section 14602.6 mandates release from impoundment when the vehicle: (A) "is a stolen vehicle" or " (B) "is subject to bailment and is driven by an unlicensed employee of a business establishment, including a parking service or repair garage." Release is also required when the circumstances are "mitigating" within the meaning of subdivision (b) of section 14602.6. The term "mitigating circumstances" is not defined in section 14602.6 but has been construed by the First District California Court of Appeal to include an owner's lack of knowledge that the person he allowed to drive his vehicle had a suspended driver's license. Other circumstances considered "mitigating" are to be determined on a case by case basis, with impounding agencies instructed by the California Court of Appeal "to take into account the fact that, sometimes, impounding a vehicle for the entire 30-day period will not advance the deterrent purpose of this statute." And, the California Attorney General has concluded that law enforcement agencies are free to adopt policies providing for early release of a vehicle from impound based on grounds *not* stated in section 14602.6 or found elsewhere in the Vehicle Code. (See Calif. A.G. Opn. No. 12-301 (May 3, 2012).)

## FACTS OF THIS CASE

24. Plaintiffs are each married and have families consisting of minor children. Plaintiffs own vehicles which they use for work and to transport their families to school, medical appointments, and other day-to-day necessities of life. Plaintiffs, however, are not validly licensed to drive in California because they are not eligible to obtain driver's licenses due to their immigration status. Whether plaintiffs will in the future qualify for federal deferral under the Dream Act and thereby qualify for a California license under section 12801.6, subdivision (b), is the subject of significant debate and cannot be forecast. Plaintiffs were previously validly licensed to drive in a foreign jurisdiction, Mexico, though such licenses long-ago expired. Plaintiffs have not suffered the suspension or revocation of driving privileges in this state or any foreign jurisdiction.

25. OJEDA's vehicle was impounded under section 14602.6 by RPDPS on February 25, 2012 and DECTOR's vehicle was impounded by RPDPS on April 2, 2012. The vehicles were towed to a storage yard by a private company which contracts with THE CITY to tow and impound vehicles at the direction of RPDPS.

26. As a matter of standard practice, following the impoundment of a vehicle, the only notice provided by RPDPS is a 2-page CHP-180 form (aka "Notice of Stored Vehicle"). The front of the CHP-180 form provides boxes in which to add basic information for the impounded vehicle, including the make, model, year, and license plate and vin number, and the name(s) and address(es) of the legal and registered owner(s). The front of the form also provides a space to write in the "storage authority/reason," such as section 14602.6. The back of the form states that the owner of the vehicle is entitled to request a "storage hearing" by contacting the seizing law enforcement agency within 10 days.

27. The standard CHP-180 form does _not_ provide space for any information concerning the factual grounds for an impound, such as the identity of the driver and statutory grounds for the suspension of his/her driving privileges, nor does it provide space to set forth the available statutory ground for release of a vehicle from impound under section 14602.6 or the policies and practices of the impounding agency. The form does not state even in general terms that there are exceptions to section 14602.6 and early release from impound may be granted.

28. Thus far, plaintiff's counsel has been provided a copy the CHP-180 form for the impoundment of plaintiff Dector's vehicle. It is unknown if CHP-180 form was mailed to Dector. On information and belief, plaintiffs allege that CHP-180 forms were not mailed to them or, if mailed, the forms stated the storage authority for impoundment was section 14602.6, not section 14607.6, as the City and RPDPS claimed in their February 22, 2013 motion to dismiss the original complaint.

29. Other than the standard CHP-180 form, RPDPS does not provide vehicle owners or their counsel with copies of any documents in advance of an impound hearing, or permit them to read and review the documents, such as police reports, DMV printouts, CLETS reports, and witness statements which the RPDPS routinely relies on to justify a vehicle impoundment.

RPDPS also does not provide notice of its unique policies applicable to vehicle impoundment under section 14602.6, and those policies are not publicly available. A vehicle owner is left to guess at the evidence against him and the available grounds for release of the vehicle.

30. Impound hearings are conducted informally by telephone or at the RPDPS office, often in the lobby. The hearings are exceedingly informal and usually last no more than 5 minutes, often much less. The hearing officer does not present evidence in oral or documentary form. Rather, the hearing officer reviews information found in documents which have not been shown to the registered or legal owner– such as police reports, DMV printouts and CLETS reports – and sometimes, but not always, speaks with the officer who orders the impoundment, in which event the conversation occurs outside the presence of the vehicle owner.

31. The hearing officer invites the vehicle owner to explain why he believes the vehicle should be released, but does not explain the available grounds for release or allow the owner to review the documents which the hearing officer has considered. The vehicle owner is provided a form prepared by RPDPS and asked to complete it. The form asks questions such as whether the owner was driving at the time of impoundment, and why the owner believes he is entitled to release. When the owner has completed the form and made an oral statement concerning the reasons he believes the vehicle should be released , the hearing officer orally announces the decision whether to retain the vehicle in impound for 30-days. There is no contemporaneous record made of the evidence presented at the hearing. The hearing officer rarely takes notes and then only in the most cursory manner.

32. On the aforementioned form completed by the owner, the hearing officer writes in a short statement of the reason the vehicle will not be released. However, the vehicle owner is not given a copy of the form, nor is he provided with any other document describing the evidence presented at the hearing and the grounds for the hearing officer's decision. The owner is given only an abrupt oral explanation.

33. Plaintiffs each timely requested impound hearings. Consistent with RPDPS's policy and practice, plaintiffs were not provided any documents in advance of the hearing, other than, perhaps, the CHP-180 form which may have been mailed to them. The hearing officer (name

unknown) did not present any evidence or make an opening statement of the factual and legal grounds for the impoundment. The hearing officer reviewed police reports, citations, DMV printouts and CLETS reports, but did not summarize or even highlight the information for plaintiffs or permit them to review the documents themselves. The hearing officer invited plaintiffs to complete a form questionnaire and to therein explain why plaintiffs believed their respective vehicles should be released, but the hearing officer did not explain the available grounds for release under section 14602.6 or RPDPS' policy.

34. The plaintiffs told the hearing officer they had previously been issued a driver's license from a foreign jurisdiction, Mexico, and offered to provide copies of their respective licenses. Plaintiffs were informed orally that their vehicles would not be released because under RPDPS's policy, an expired driver's license was not considered to be valid grounds for release under section 14602.6.[2] On the face of the impound hearing request form which plaintiff Dector had submitted, the hearing officer checked a box stating, "The storage is upheld," and adjacent thereto wrote, "R/O [registered owner] has exp[ired] Mexico DL [driver's license]. Used fraudulent consulate card for I.D." On information and belief, plaintiffs allege that a similar explanation for the hearing officer's decision was written on the request for submitted by plaintiff Objeda. However, plaintiffs were not given a copy of the respective forms or otherwise provided with a written statement setting forth the evidence presented at the hearing and grounds for the hearing officer's decision.[3]

35. Plaintiffs were not told that their vehicles had been seized for purposes of forfeiture under section 14607.6. "Section 14607.6" and "forfeiture" were not mentioned at all. The hearing was based solely on the 30-day "impoundment" of plaintiffs' vehicles under section 14602.6.

---

[2] After the filing of this lawsuit, RPDPS changed its policy.

[3] On motion to dismiss the original complaint, THE CITY and RPDPS requested judicial notice of Sonoma County Superior Court criminal dockets showing that plaintiffs have suffered a combined total of 10 prior convictions for driving without a valid licence in violation of section 12500. No such evidence was presented at the impound hearings.

36. Following the 2 hearings, plaintiffs separately contacted Santa Rosa attorney Alicia Roman, who is well-known locally for her legal and political opposition to 30-day impoundment under section 14602.6, and other similar issues confronting undocumented aliens who cannot obtain a valid California driver's license. Attorney Roman telephoned RPDPS and spoke to the hearing officer and/or his immediate superior. Attorney Roman explained that plaintiffs' vehicles were not lawfully impounded under section 14602.6 because each of the plaintiffs had expired Mexican driver's licenses. Attorney Roman provided, or offered to provide, copies of the plaintiffs' expired Mexican driver's licenses. RPDPS rebuked attorney Roman on every point and refused to release plaintiffs' vehicles from 30-day impound under section 14602.6. RPDPS made no mention of section 14607.6 or the word "forfeiture." Attorney Roman later sent letters to RPDPS detailing her efforts and restating the reasons she believed the impoundment were unlawful. RPDPS did not respond to the letters.

37. Plaintiff Dector's vehicle was held in impound for 8 days, from April 2, 2012 thru April 10, 2012. Then, for reasons unknown, RPDPS Sargent Welch authorized the vehicle's release. Plaintiff Dector paid approximately $600 to secure the release of the vehicle. To date, plaintiff and his counsel have not been told why the vehicle was released after just 8 days when the hearing officer had ruled that it would be held for 30 days.

38. Documents concerning plaintiff Ojeda's vehicle have not been made available to plaintiffs or their counsel. On information and belief, plaintiffs allege that Ojeda's vehicle remained in impoundment for the full 30 days and Ojeda paid approximately $1,600 to secure the vehicle's release.

39. Plaintiffs did not file a petition for writ of mandamus under section Code of Civil Procedure section 1094.5, seeking review of the hearing officers' decisions, because plaintiffs had not been provided a written statement of decision and, to their knowledge, there was (and still is) no adequate administrative record available for review.

40. Plaintiffs timely filed Government Claims with THE CITY seeking damages for the unlawful impoundment and retention of their vehicles. The claims were denied on July 25, 2012. Plaintiffs commenced this action within 6 months of the denials so as to preserve their right to

claim damages for violation of California law.

## POLICY AND PRACTICE

41. The conduct of the RPDPS as described herein was undertaken pursuant to long-established policies and practices of RPDPS as developed, implemented and approved by high-ranking RPDPS' officers who have been vested by THE CITY with decision-making authority with respect to the impoundment of vehicles under section 14602.6 and the post-seizure notice and hearing process, as described herein-above at paragraphs 26-36. THE CITY has ratified and approved the policies and practices by express decree or implication. The policies and practices are over 15 years old, are widespread and prevalent, and are open and notorious, such that THE CITY necessarily knows of the policies and practices and by failing to disavow them or take other remedial action, has implicitly approved and ratified the policies and practices.

42. For the reasons stated herein, RPDPS and THE CITY's policies and practices are contrary to well-established constitutional principles. RPDPS and THE CITY knew or should have known that their policies and practices, and the application of those policies and practices to plaintiffs and others similarly situated, violate the procedural due process guarantees of the 14th Amendment of the U.S. Constitution and are contrary to the plain language of section 14602.6.

## FIRST CAUSE OF ACTION

**Damages under 42 U.S.C. §1983 for Violation of the 14th Amendment of the U.S. Constitution Based on Denial of Procedural Due Process**

43. Under the due process protections afforded by the 14th Amendment of the U.S. Constitution, plaintiffs (and all other vehicle owners) were and are entitled to receive, but did not in fact receive:

(1) Timely written notice of the factual basis for the impoundment of the vehicle and the available grounds for release under section 14602.6 and RPDPS' policy.

(2) Copies of all evidence on which RPDPS intended rely on to justify the impoundment of plaintiffs' vehicles, including police reports, DMV printouts, CLETS reports and witness statements and any other document reviewed or considered by the impound hearing officer.

(3) A fair opportunity to hear, review and respond to all information and evidence

considered by the impound hearing officer, including statements made orally to the hearing officer by the officers who ordered the impoundment.

(4) A written statement summarizing the evidence presented and factual and legal grounds for the decision, in order to create a minimal record for administrative appeal and judicial review.[4]

44. The above-stated rights are of particular importance following the THE CITY and RPDPS' filing of their motion to dismiss the original complaint, wherein the CITY and RPDPS averred that plaintiffs' vehicles were actually impounded for purposes of forfeiture under section 14607.6, not for 30-days under section 14602.6. The 2 statutes provide for entirely different procedural protections and afford different grounds for release of an impounded vehicle. Plaintiffs had no notice that section 14607.6 was claimed as the grounds for impoundment (if indeed it was so claimed). Likewise, plaintiffs had no notice that their prior convictions for driving without a valid license under section 12500 were considered by the hearing officers as grounds for impoundment under section 14602.6. Indeed, other than the section 12500 violations which produced the subject impoundments, plaintiffs had no notice of any other information which the hearing officers considered to justify the impoundments. In fact, at this time, plaintiffs and plaintiffs' counsel still have no idea what specific documents and information the hearing officers considered– though a few documents related to plaintiff Dector were provided by defense counsel to plaintiff's counsel after the filing of the first amended complaint.

45. As a result of defendants' violation of plaintiffs' right to procedural due process under the 14th Amendment of the U.S. Constitution, plaintiffs' suffered damages, including the amount paid to secure release of their vehicles– about $600 for Dector and about $1600 for Ojeda. The damages suffered by the plaintiffs was reasonably foreseeable. Plaintiffs are entitled to recover damages under 42 U.S.C. section 1983. The precise amount of damages is unknown at this time

---

[4] See *Gete v. INS*, 121 F.3d 1285, 1298-1299 (9th Cir. 1997) ("*Gete I*") [so requiring when the government seizes vehicles for purposes of administrative forfeiture]; *Gete v. INS* 1999 U.S. Dist. LEXIS 11806, *10-17 (E.D. Wash 1999) [reaffirming *Gete I* on remand following intervening U.S. Supreme Court decision which the INS claimed had superceded the 9th Circuit's holding in *Gete I*]; *Al Haramain Islamic Foundation, Inc. v. US Department of Treasury*, 686 F.3d 965, 987 [*Gete I* controls in various factual contexts].

and will be proven at trial.

## SECOND CAUSE OF ACTION

### Pendent State Law Claim for Damages

46. As to each of the plaintiffs, it appears the sole grounds stated for the impoundment of their vehicles was their arrest for driving without a valid license under section 12500, which arrest would be unlawful under California law, per section 12801.5(e), which prohibits the "arrest" of a person over age 16 solely on the belief that the person is an unlicensed driver. Section 14602.6, subdivision (a)(1), in turn, requires an "arrest" of the driver be made before the vehicle is subject to impoundment under the statute. An unlawful arrest made in violation of section 12801.5(e) renders unlawful a vehicle impoundment under section 14602.6.

47. In addition, the impoundments were unlawful under section 14602.6 because each of the plaintiffs possessed an expired driver's license from Mexico, and had not suffered a suspension or revocation of driving privileges in California or elsewhere.

48. Under California law, plaintiffs are entitled to damages for the unlawful impoundment of their vehicles. Such damages include the amounts paid to secure release of the vehicles from impoundment– about $600 for Dector, about $1600 for Ojeda.

## CLASS ACTION CLAIM FOR DAMAGES

49. There exists a class of persons similarly situated to plaintiffs for which class certification is warranted under Rule 23 of the Federal Rules of Civil Procedure.

50. RPDPS has during the preceding 4 year period impounded at least 500 vehicles under section 14602.6. With every impounded vehicle, a violation of procedural due process results based on the inadequate notice and defective hearing process provided by the defendants as identified in paragraphs 26-36, above. A subset of those impoundments, estimated to number at least 200, involve the state statutory violations identified herein at paragraphs 46-47.

51. Plaintiffs identify the class, generally, as all those who have suffered the impoundment of a vehicle under section 14602.6 at the hands of the defendants in the 2 year period preceding the filing of this action.

52. As concerns the due process claim for which class certification is requested, the

factual similarities of the putative class members predominate. The commonality and typicality of the facts and legal issues warrant class certification. Class certification is preferable to individual actions. In the absence of class certification, it is likely that the vast majority of aggrieved vehicle owners will receive no recompense and defendants' conduct will continue unabated, as the vast majority of vehicle owners do not have the knowledge or resources to file government claims against the defendants and/or timely bring litigation in state or federal court.

53. The plaintiffs are suitable class members and their counsel is capable of adequately representing the class, having practiced in the area of vehicle impoundment and forfeiture for over 15 years, as law clerk and attorney, with numerous published California appellate cases in this area, including 1 from the California Supreme Court.

54. Calculation of damages for each class member is not overly difficult or cumbersome, as each impound results in storage, towing and release fees which are paid as a condition of release and are known to RPDPS, which keeps records of the amounts paid. In those cases where a vehicle was sold rather than released, the tow company is mandated by California law to provide a lien notice which includes an estimated value of the vehicle. The tow companies and RPDPS keep records of the lien notices as well as the actual sale price of the vehicles sold at auction. The available records may be used to determine damages for each class member.

55. The class claims are based on damages under 42 U.S.C. section 1983, not state law, though violation of state law as described in paragraphs 46-47, above, contribute to the federal due process violations at issue and, therefore, contribute to the damages sustained by the putative class members.

56. The damages suffered by the class members was reasonably foreseeable and the direct consequence of defendants' conduct and policies and practices as described herein. The precise amount of damages is unknown at this time and will be proven at trial, but is estimated to be $500-$1,000 per class member. Using 200 as an estimate of the class size, damages would be $100,000-$200,000.

## **PRAYER**

WHEREFORE, plaintiffs pray for the following relief:

1. For certification of the class or subclasses for purposes of a damage claim as described herein-above;

2. For damages on behalf of plaintiffs and the class pursuant to 42 U.S.C. §1983;

3. For costs of suit, including attorneys fees pursuant to 42 U.S.C. §1983, Code of Civil Procedure sections 1021.5 and 1033.5, or as otherwise available by law; and

4. For such other relief as the court deems just.

Date: May 27, 2013

LAW OFFICES OF MARK T. CLAUSEN

By: _____
Mark T. Clausen
Attorney for Plaintiffs DECTOR and OJEDA

## PROOF OF SERVICE

I, the undersigned, do hereby declare:

I am over the age of 18 and not a party to the above-entitled action. My business address is 769 Carr Avenue, Santa Rosa, California, 95404. On the date indicated below true copies of the attached documents were placed in a sealed envelope, postage prepaid, and deposited in the United States Mail, address as follows:

| | |
|---|---|
| Robert W. Henkels, Esq.<br>Geary, Shea, O'Donnell, Grattan & Mitchell, P.C.<br>37 Old Courthouse Square, 4th Floor<br>Santa Rosa, California 95404 | Attorneys for Defendants City of Rohnert<br>and Rohnert Park Dept. Pub. Sfty. |

I declare that the foregoing is true and correct under penalty of perjury of the laws of the State of California. So declared this 30th day of May 2013 at Santa Rosa, California.

_____
Mark T. Clausen